UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV14-07793 JAK (AJWx) | Date | April 27, 2015 |
|---|---|---|---|
| Title | Colette Carpenter, et al. v. Sikorsky Aircraft Corporation, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE DEFENDANTS BAE SYSTEMS, INC., ET AL.'S MOTION TO DISMISS (DKT. 16); DEFENDANT PROTOTYPE ENGINEERING AND MANUFACTURING, INC.'S MOTION TO DISMISS COMPLAINT AND JOINDER TO BAE SYSTEMS' MOTION TO DISMISS (DKT. 18); and DEFENDANTS SIKORSKY AIRCRAFT CORPORATION, ET AL.'S MOTION TO DISMISS (DKT. 20)**

**I.    Introduction**

On September 8, 2014, Colette Carpenter, individually and as administrator of the estate of Clayton O. Carpenter, Jon Ternstrom, Maria Ternstrom, Cameron Witzler and Michelle Witzler (collectively, "Plaintiffs") brought this action as a result of the death to one and serious injuries to others that resulted from the crash of a helicopter in Georgia. Complaint ("Compl."), Dkt. 1-1, Ex. A. The Complaint advances three causes of action: (1) strict liability; (2) breach of warranty; and (3) negligence. *Id.* The Complaint names as defendants entities allegedly responsible for manufacturing, inspecting and maintaining the helicopter involved in the crash. *Id.* They are: Sikorsky Aircraft Corp. and Sikorsky Aerospace Maintenance (collectively, "Sikorsky Defendants"); Prototype Engineering and Manufacturing, Inc. ("Prototype"); Cubic Defense Applications, Inc. ("Cubic"); and BAE Systems, Inc., BAE Systems Simula, Inc. and BAE Systems Aerospace & Defense Group, Inc. (collectively, "BAE Defendants"). *Id.*[1] The BAE Defendants, Prototype and Sikorsky Defendants each filed a motion to dismiss ("Motions"). Dkt. 16; Dkt. 18; Dkt. 20. Plaintiffs opposed the Motions. Dkt. 53; Dkt. 54; Dkt. 55.

A hearing on the Motions was held on March 9, 2015 and they were taken under submission. For the reasons stated in this Order, the respective Motions of the BAE and the Sikorsky Defendants are **GRANTED** as to the lack of personal jurisdiction. The Motion brought by Protoype is **GRANTED IN PART**

---

[1] On January 9, 2015, Plaintiffs filed an unopposed Ex Parte Application to substitute L-3 Communications Integrated Systems, L.P. ("L-3") as Doe 41. Dkt. 48. That Application was granted on January 13, 2015. Dkt. 49. At the times relevant to the present Motion, L-3 had not yet appeared in the action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07793 JAK (AJWx) | Date | April 27, 2015 |
|---|---|---|---|
| Title | Colette Carpenter, et al. v. Sikorsky Aircraft Corporation, et al. | | |

and **DENIED IN PART**. Thus, the Motion is **DENIED** without prejudice as to whether this matter presents a non-justiciable, political question. The Motion is **GRANTED** pursuant to Fed. R. Civ. P. 12(b)(6) without prejudice to the filing of an amended complaint.

## II.    Procedural Background

Plaintiffs filed the Complaint on September 8, 2014 in the Los Angeles Superior Court. Compl., Dkt. 1-1, Ex. A. On October 8, 2014, the BAE Defendants removed the action. Dkt. 1. Prototype, the Sikorsky Defendants and Cubic joined in the removal. Dkt. 4; Dkt. 6; Dkt. 10. The BAE Defendants asserted federal subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441(a). Dkt. 1 at 1. They contend that there is original subject matter jurisdiction because the helicopter crashed in a federal enclave. 28 U.S.C. § 1331. *Id.*; *see also* Compl. ¶ 27 (acknowledging that the incident occurred on federal land and that Georgia substantive law governs under 16 U.S.C. § 457 (repealed Dec. 19, 2014)).[2]

Cubic answered. Dkt. 19. On October 15, 2014, the BAE Defendants, Prototype and the Sikorsky Defendants (the "Moving Defendants") moved to dismiss. Dkt. 16 ("BAE Motion"); Dkt. 18 ("Prototype Motion" and Joinder in BAE Motion); Dkt. 20 ("Sikorsky Motion").

On October 31, 2014, the Court granted a request by the parties (Dkt. 29) to permit Plaintiffs to conduct jurisdictional discovery over a 90-day period. Dkt. 30. On January 6, 2015, Plaintiffs filed an unopposed ex parte application in which they requested an additional 60 days to complete jurisdictional discovery. Dkt. 44. That application was granted, in part, on January 7, 2015. Dkt. 47. Thereafter, Plaintiffs filed oppositions to the Motions. Dkt. 53-55. The Moving Defendants replied. Dkt. 57-59.

## III.    Factual Background

### A.    Factual Allegations in the Complaint

On January 15, 2014, Clayton Carpenter ("Carpenter"), Jon Ternstrom ("Ternstrom") and Cameron Witzler ("Witzler") operated an MH-60M Blackhawk helicopter, Tail Number 05-20005 (the "Helicopter") on a planned flight from St. Augustine, Florida to Hunter Army Airfield in Savannah, Georgia ("Hunter"). Compl. ¶¶ 28, 45. Ternstrom was the pilot-in-command. *Id.* ¶ 45. Carpenter was the co-pilot. *Id.* Witzler was the crew chief. *Id.*

As the Helicopter approached Hunter, it suddenly "experienced, *inter alia*, a failure of the Tail Rotor Pitch Change Shaft and began to rotate." *Id.* ¶ 46. Carpenter, Ternstrom and Witzler made unsuccessful attempts to stop this rotation. *Id.* The Helicopter spun out of control and crashed. *Id.* Carpenter suffered severe injuries and died shortly after the crash. *Id.* ¶ 47. Ternstrom and Witzler suffered severe injuries, but survived. *Id.* ¶¶ 47-48.

---

[2] The Act still applies with "respect to rights and duties that matured, penalties that were incurred, or proceedings that were begun before the date of enactment of this Act." National Park Service and Related Programs Act of 2014, Pub. L. No. 113-287,128 Stat. 3094, 3273.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07793 JAK (AJWx) | Date | April 27, 2015 |
|---|---|---|---|
| Title | Colette Carpenter, et al. v. Sikorsky Aircraft Corporation, et al. | | |

Plaintiffs allege that the crash was caused by defects in the tail rotor pitch change shaft and related systems. *Id.* ¶ 32. Plaintiffs also contend that the injuries sustained by Carpenter, Ternstrom and Witzler were caused, in part, by the failure of their seats to "absorb or otherwise attenuate the force of the impact, as they were designed, manufactured and held out to do." *Id.* ¶ 50. The Complaint also alleges that the Electronic Locator Transmitter ("ELT") failed to alert Air Traffic Control that a crash had occurred. *Id.* ¶ 51. The Complaint alleges that, as a result, "valuable time was lost because air traffic control and others were not promptly put on notice of the crash, and emergency vehicles were not immediately dispatched to the scene to render medical aid to the injured crew." *Id.*

The Complaint does not make separate allegations at to the conduct of each named defendant. Instead, it alleges that each "among other things, designed, manufactured, tested, inspected, assembled, instructed, maintained, trained, distributed, advertised, marketed, warranted, and sold [the Helicopter] and/or its component parts." *Id.* ¶¶ 11, 13, 15, 19.

    B.    Jurisdictional Allegations and Evidence Presented by the Parties

The Sikorsky and BAE Defendants contend that there is no personal jurisdiction in this District.[3] The resulting issues are addressed separately as to each of these parties.

        1.    <u>The BAE Defendants</u>

            a)    Plaintiffs' Allegations and Contentions

The Complaint alleges that BAE Systems, Inc. is a Delaware corporation that is registered with the California Secretary of State. Compl. ¶ 16. It also alleges that BAE Systems, Inc. does business in Ontario, California. *Id.* The Complaint alleges that BAE Systems Simula, Inc. is an Arizona corporation. *Id.* ¶ 17. It also alleges that BAE Systems Simula, Inc. does business in California. *Id.* Finally, the Complaint alleges that BAE Systems Aerospace & Defense Group, Inc. is an Arizona corporation, which does business in Arizona. *Id.* ¶ 18.

Plaintiffs contend that the BAE Defendants have "four physical plants, with California employees, payroll, contracts, and takes advantage of the privileges and benefits of a California corporation." BAE Opposition, Dkt. 53 at 10. Plaintiffs offer no evidence in support of these assertions.

            b)    Evidence Offered by the BAE Defendants

The BAE Defendants offer the declaration of Frank Crispino in support of their Motion. Decl. of Frank Crispino ("Crispino Decl."), Dkt. 16-1. Crispino is the "General Manager at BAE Systems Aerospace & Defense Group, Inc." *Id.* ¶ 2. He states that he is responsible for "knowing the location of each Aerospace

---

[3] It is alleged that Prototype is a California corporation. Compl. ¶ 12. Moreover, because Prototype did not contest personal jurisdiction in its initial responsive filing, this defense has been waived. *See* Fed. R. Civ. P. 12(h).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07793 JAK (AJWx) | Date | April 27, 2015 |
|---|---|---|---|
| Title | Colette Carpenter, et al. v. Sikorsky Aircraft Corporation, et al. | | |

& Defense facility and where each Aerospace & Defense employee is stationed, as well as the location of any Aerospace & Defense bank accounts and any real property owned by Aerospace & Defense." *Id.* ¶ 2.

Crispino declares that he has reviewed the allegations as to the BAE Defendants and understands that their alleged role in the underlying events was the installation of the pilot seats of the Helicopter. *Id.* ¶ 3. Crispino declares that BAE Aerospace & Defense Group, Inc. performed no work on the pilot seats in California and that these seats were never shipped to California by his company. *Id.* Crispino declares that all work on the seats was performed in Arizona pursuant to "detailed government specifications." *Id.* After being constructed, the seats were delivered to Connecticut. *Id.*

Crispino declares that BAE Aerospace & Defense Group, Inc. has no offices in California, has no employees in California and has no "phone numbers, bank accounts, or real property" in California. *Id.* ¶ 4. He also declares that BAE Aerospace & Defense Group, Inc. pays no state or local taxes in California. *Id.*

With regard to BAE Systems, Inc. and BAE Systems Simula, Inc., Crispino declares that these entities had "no involvement with the seats on the accident helicopter." *Id.* ¶ 5. He also states that BAE Systems Simula, Inc. is the parent company of BAE Aerospace & Defense Group, Inc. and is headquartered and incorporated in Arizona. *Id.* He adds that BAE Systems, Inc. is the "great-grandparent" of BAE Systems Simula, Inc. and is headquartered in Virginia and incorporated in Delaware. *Id.* ¶ 6.

    2.    <u>The Sikorsky Defendants</u>

        a)    Allegations and Evidence Offered by Plaintiffs

The Complaint alleges that Sikorsky Aircraft Corporation "is a Delaware corporation with its principal place of business in Stratford, Connecticut." Compl. ¶ 9. It also alleges that, "on information and belief," Sikorsky Aircraft Corporation does business in California. *Id.* The Complaint alleges that Sikorsky Support Services, Inc. is a "Delaware corporation." *Id.* ¶ 10. It also alleges that Sikorsky Support Services, Inc. is registered with the California Secretary of State and does business in Los Angeles, California. *Id.*

Plaintiffs contend that the Sikorsky Defendants sell Blackhawk helicopters and parts in California. Sikorsky Opposition, Dkt. 55 at 9. Plaintiffs also argue that the Sikorsky Defendants would not respond to discovery as to how many helicopters were shipped into California, gross sales in California, or profits in California. *Id.* They contend that 3% of the 2013 sales revenues of the Sikorsky Defendants were generated in California.[4] *Id.* at 10; *accord* Sikorsky Response to Interrogatories Nos. 16-17, Dkt. 56-5, Ex. 5 at 12-14. Plaintiffs contend that 3% of total sales is $114 Million, but provide no evidence in support

---

[4] No evidence has been presented as to the source of this claimed revenue within the operations of the Sikorsky Defendants in California. *See* Opposition, Dkt. 55 at 9-10. Accordingly, no weight is given to this aspect of Plaintiffs' argument.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07793 JAK (AJWx) | Date | April 27, 2015 |
|---|---|---|---|
| Title | Colette Carpenter, et al. v. Sikorsky Aircraft Corporation, et al. | | |

of this calculation.[5] Plaintiffs contend that the Sikorsky Defendants are wholly owned subsidiaries of United Technologies Corporation. Sikorsky Response to Interrogatory No. 1, Dkt. 56-5, Ex. 5 at 6.

Plaintiffs contend that the Sikorsky Defendants have sold helicopters to the Los Angeles Fire Department. In support of this position they cite what appear to be articles or advertisements on a website called "helis.com." *See* Dkt. 56-9, Ex. 9 at 2; Dkt. 56-10, Ex. 10 at 2. Plaintiffs also state that the Sikorsky Defendants gave an award and scholarship to a teenager in California for his design of an unmanned helicopter that could deliver relief supplies. Sikorsky Press Release, Dkt. 56-11, Ex. 11 at 2. The Press Release states that the award was given in Stratford, Connecticut. *Id.* Plaintiffs also attach an article from the website "Exhibitor Magazine Online." It describes a 2009 exposition in Anaheim, California in which the Sikorsky Defendants participated. Dkt. 56-12, Ex. 12. Finally, Plaintiffs contend that the Sikorsky Defendants have previously been parties to litigation in California.

        b)        Evidence Offered by the Sikorsky Defendants

The Sikorsky Defendants have presented the declaration of James P. Antippas. Decl. of James P. Antippas ("Antippas Decl."), Dkt. 20-1. Antippas states that he is a "Legal Specialist in the Litigation Department of Sikorsky Aircraft Corporation." *Id.* ¶ 1. He declares that both Sikorsky Aircraft Corporation and Sikorsky Support Services are Delaware corporations with their principal places of business in Stratford, Connecticut. *Id.* ¶¶ 2-3. He declares that the Helicopter at issue was manufactured in Connecticut pursuant to a U.S. procurement contract. *Id.* ¶ 5. He declares that the Helicopter was sold to the U.S. military in 1991, and that the Sikorsky Defendants have not "performed any service or maintenance" on the Helicopter. *Id.* ¶¶ 6-8.

Antippas declares that Sikorsky Aircraft Corporation does not design or manufacture any helicopters in California, has no manufacturing facilities in California and is not registered to conduct business in California. *Id.* ¶ 9. He further declares that Sikorsky Support Services has a certificate of qualification under Cal. Corp. Code § 2105 and has offices in California "in support of programs unrelated to the [Helicopter] involved in this lawsuit." *Id.* ¶ 10.[6]

---

[5] Plaintiffs cite Exhibit 8 of their "Compendium of Exhibits." Dkt. 56-8. Exhibit 8 is a Business Highlights webpage for United Technologies that provides information on Sikorsky. *Id.* Below a photograph of a helicopter, the webpage includes three boxes providing information about "employees," "net sales," and "operating profit." The reported "net sales" is $6.8 billion. The reported operating profit is $712 million. Elsewhere on the page the following language appears: "Sikorsky | United Technologies 2012 Annual Report." Because three percent of $6.8 billion is $204 million, and three percent of $712 million is $21.36 Million, the basis for Plaintiffs' calculation of the $114 Million amount is not clear.

[6] Cal. Corp. Code § 2105 requires that a foreign corporation obtain a certificate of qualification before engaging in business in California.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07793 JAK (AJWx) | Date | April 27, 2015 |
|---|---|---|---|
| Title | Colette Carpenter, et al. v. Sikorsky Aircraft Corporation, et al. | | |

**IV.   Analysis**

   A.   Whether There Is Personal Jurisdiction over the BAE and Sikorsky Defendants

      1.   Legal Standards

To establish personal jurisdiction over a party that does not reside in the forum state, the party asserting jurisdiction must show both that the long-arm statute of the forum state confers personal jurisdiction over the party challenging jurisdiction, and that the exercise of that jurisdiction will conform to the requirements of due process. *See Gray & Co. v. Firstenberg Mach. Co., Inc.*, 913 F.2d 758, 760 (9th Cir. 1990). California's long-arm statute is consistent with federal due process requirements. Cal. Code Civ. Proc. § 410.10; *Roth v. Garcia Marquez*, 942 F.2d 617, 620 (9th Cir. 1991).

Due process requires that an out-of-state defendant have sufficient minimum contacts with the forum such that the exercise of in personam jurisdiction would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). There are two types of personal jurisdiction: specific and general. *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014).

      a)   General Personal Jurisdiction

General jurisdiction allows "a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Martinez*, 764 F.3d at 1066. General jurisdiction "over a corporation is appropriate only when the corporation's contacts with the forum state are so constant and pervasive as to render it essentially at home in the state." *Id.* (internal quotation marks omitted). The standard for general jurisdiction is explained in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011) and *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).

*Goodyear* concerned an action brought by parents of two children who died in a motor vehicle accident that occurred in France. 131 S.Ct. at 2850. The tires on the bus that was involved were manufactured in Turkey by a subsidiary of The Goodyear Tire and Rubber Company ("Goodyear"). Goodyear was incorporated in Ohio. The parents of the victims brought an action in North Carolina in which they named Goodyear and its foreign subsidiaries as defendants. *Id.* The foreign subsidiaries argued that there was no personal jurisdiction. *Id.* The Court concluded that there was no jurisdiction over these parties. *Id.* at 2855-56. The Court reasoned that "ties serving to bolster the exercise of specific jurisdiction do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant." *Id.* at 2855 (emphasis in original). Applying this standard, the Court concluded that there was no in personam jurisdiction because there was no evidence of "continuous and systematic general business contacts" that allowed North Carolina "to entertain suits [against the foreign subsidiaries] on claims unrelated to anything that connects them to the State." *Id.* at 2857.

*Daimler* concerned an action brought by victims and family members against a company that manufactured Mercedes-Benz vehicles. 134 S.Ct. at 751. The plaintiffs alleged that a subsidiary of Daimler conspired with the government of Argentina to "kidnap, detain, torture, and kill" certain workers.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07793 JAK (AJWx) | Date | April 27, 2015 |
|---|---|---|---|
| Title | Colette Carpenter, et al. v. Sikorsky Aircraft Corporation, et al. | | |

*Id.* Plaintiffs sued Daimler in California and argued that there was general jurisdiction due to the contacts that a Daimler subsidiary had in California. *Id.* at 752.[7] The Court disagreed. It found that the relevant question for general jurisdiction is not whether the out-of-state defendant's contacts with the forum are "continuous and systematic." *Daimler*, 134 S.Ct. at 761. Rather, the question is whether "that corporation's affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State." *Id.* The Court emphasized that "neither Daimler nor [the subsidiary] is incorporated in California, nor does either entity have its principal place of business there" and that allowing general jurisdiction would make both amenable to suit in every other state where sales were "sizable." *Id.* Accordingly, general jurisdiction did not comport with due process. *Id.* Only in an "exceptional case" is general jurisdiction available anywhere other than the principal place of business or state of incorporation. *See id.* at 761 n.19[8]; *accord Martinez*, 764 F.3d at 1070.

b)   Specific Personal Jurisdiction

Specific personal jurisdiction requires a showing of forum-related activities of the defendant that are related to the claim asserted. *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993). It is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 131 S.Ct. at 2851 (internal quotation marks removed). The Ninth Circuit has established a three-part test for determining specific jurisdiction: (1) the defendant must purposefully avail himself of the privilege of conducting activities in the forum and invoking the benefits and protections of its laws; (2) the claim must arise out of or result from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable. *Id.*; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985). The party asserting jurisdiction bears the burden of satisfying the first two prongs of this test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If that party does so, the burden then shifts to the party contesting jurisdiction to "present a compelling case" that the third prong of reasonableness has not been satisfied. *Id.*

c)   Burden of Proof

The burden of proof for establishing personal jurisdiction depends on the "mode of determination" employed by the district court in deciding the issue. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d

---

[7] The Supreme Court assumed, for the purposes of its analysis, that the subsidiary's contacts with California could be imputed. *Id.* The subsidiary at issue had extensive contacts with California, including offices and it generated a significant percentage of total sales of Mercedes Benz vehicles. *Id.* at 752.

[8] The Court cited *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) as an "exceptional case." There, the Court found that personal jurisdiction over a corporation based on its contacts in Ohio did not violate the due process clause of the Fourteenth Amendment. *Id.* at 447-48. The company had ceased its mining operations in the Philippines after the military occupation by the Japanese. *Id.* at 447. During the period when mining operations had ceased, the president of the corporation moved to Ohio and managed the corporation from that location. *Id.* at 448. Although Ohio was not the principal place of business or the state of incorporation, because of the president's activities there, exerting personal jurisdiction over the corporation was deemed to be consistent with the requirements of due process. *Id.*

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07793 JAK (AJWx) | Date | April 27, 2015 |
|---|---|---|---|
| Title | Colette Carpenter, et al. v. Sikorsky Aircraft Corporation, et al. | | |

1280, 1285 (9th Cir. 1977). If the personal jurisdiction question is decided on the basis of affidavits, a party asserting jurisdiction need only make a *prima facie* showing of the jurisdictional facts. *Id.*; *see also Martinez*, 764 F.3d at 1066. If it does so based on written materials, if credibility issues are presented or if there are disputed jurisdictional facts, a district court may accept evidence during a preliminary hearing to resolve the contested issues. *Data Disc*, 557 F.2 at 1285. At that point, a plaintiff must prove jurisdiction by a preponderance of the evidence. *Id.*

Uncontroverted allegations in a complaint must be taken as true when a *prima facie* showing of personal jurisdiction is required. *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). However, courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Data Disc*, 557 F.2d at 1284. Conflicts between facts contained in the parties' affidavits must be resolved in favor of the party asserting jurisdiction when deciding whether a *prima facie* showing of personal jurisdiction has been made. *Am. Tel. & Tel.*, 94 F.3d at 588.

        d)        Authority to Transfer

A district court has authority to transfer a case over which it lacks jurisdiction. *See* 28 U.S.C. §§ 1404(a), 1406(a), 1631. Transfer is permitted "however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962). A district court may transfer a case if: "(1) the transferee court would have been able to exercise its jurisdiction on the date the action was misfiled; (2) the transferor court lacks jurisdiction; and (3) the transfer serves the interest of justice." *Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1140 (9th Cir. 2008). Thus, one requirement in approving a transfer is a showing that the transferee court has jurisdiction over the action to be transferred. *See id.*

    B.    Application

        1.    <u>Whether There Is Personal Jurisdiction over the BAE Defendants</u>

Plaintiffs argue that there is specific and general personal jurisdiction over the BAE Defendants. They rely solely on the allegations in the Complaint and the statements in their Opposition that are not supported by evidence. Based on the evidence presented, neither general nor specific personal jurisdiction has been shown as to the BAE Defendants.

The Complaint acknowledges that none of the BAE Defendants is a California corporation. Compl. ¶¶ 16-18. Some are incorporated in Delaware, others in Arizona. *Id.* The Complaint does not state where each has its principal place of business. However, the Crispino Declaration states that the principal place of business of each BAE Defendant is located in either Virginia or Arizona. Crispino Decl. ¶¶ 5-6, Dkt. 16-1. Plaintiffs offer no evidence showing that this is an "exceptional case" where general personal jurisdiction over a corporation is appropriate in a state other than its principal place of business or state of incorporation. *Cf. Daimler*, 134 S.Ct. at 761 n.19. For these reasons, there is no basis to assert general personal jurisdiction in California as to the BAE Defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07793 JAK (AJWx) | Date | April 27, 2015 |
|---|---|---|---|
| Title | Colette Carpenter, et al. v. Sikorsky Aircraft Corporation, et al. | | |

The result is the same for specific personal jurisdiction. Specific personal jurisdiction requires a showing that the contacts with the forum state are derivative of or connected with the "very controversy that establishes jurisdiction." 131 S.Ct. at 2851. It is not enough that a defendant has contacts with a state. Plaintiffs have not alleged or offered evidence as to any contact with the state of California that is related to the Helicopter or the crash in Georgia. There are no allegations that any part of the Helicopter was manufactured, designed or maintained in California. Further, there is no evidence that conflicts with that presented in the declaration of Frank Crispino. *Cf.* Crispino Decl. ¶¶ 3-4, Dkt. 16-1.

For these reasons, there is no specific personal jurisdiction over the BAE Defendants. Therefore, the Motion of the BAE Defendants is **GRANTED**.

        2.       <u>Personal Jurisdiction over the Sikorsky Defendants</u>

Plaintiffs argue that there is specific and general personal jurisdiction over the Sikorsky Defendants. They rely on allegations in the Complaint and limited evidence demonstrating some contacts with California. Based on the evidence presented, personal jurisdiction has not been established.

There is no general personal jurisdiction over the Sikorsky Defendants. The Complaint acknowledges that no Sikorsky Defendant is incorporated in California. Compl. ¶¶ 9-10. Further, the Antippas Declaration demonstrates that the principal place of business of the Sikorsky Defendants is in Connecticut. Antippas Decl. ¶¶ 2-3, Dkt. 20-1. Plaintiffs have provided no evidence showing that this is an "exceptional case" in which general personal jurisdiction may be exercised in a state that is not the principal place of business or state of incorporation.

Similarly, there is no specific personal jurisdiction over the Sikorsky Defendants. Plaintiffs submitted evidence of some limited contacts with California by the Sikorsky Defendants. They contend that 3% of the total 2013 sales of the Sikorsky Defendants were derived from transactions in California, and provide evidence that three helicopters were sold to the Los Angeles County Fire Department. Further, they offer evidence of a scholarship awarded to a California student and a trade exhibition in 2009 in which the Sikorsky Defendants participated. None of these contacts is linked to the Helicopter or its crash that is at issue in this case. That link is required.

For these reasons, the Motion of the Sikorsky Defendants is **GRANTED**.

        3.       <u>Whether The Case May Be Transferred to the Southern District of Georgia</u>

In their oppositions to the Motions of BAE and Sikorsky, Plaintiffs purport to advance a motion to transfer this action to the Southern District of Georgia. That is the not the proper means to bring a motion. It must be separately filed. Nevertheless, the merits of the request are addressed.

Plaintiffs seek the transfer of this action to the Southern District of Georgia should the Court determine that there is no personal jurisdiction over the BAE and Sikorsky Defendants. The only evidence offered in support of the appropriateness of finding jurisdiction in the Southern District of Georgia is one sentence; it

Case 3:15-cv-02438-B   Document 67   Filed 04/27/15   Page 10 of 15   PageID 770

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07793 JAK (AJWx) | Date | April 27, 2015 |
|---|---|---|---|
| Title | Colette Carpenter, et al. v. Sikorsky Aircraft Corporation, et al. | | |

states that the crash occurred in Georgia, whose substantive law, therefore, applies. As Plaintiffs state in the Complaint, Georgia law may apply as the result of the application of the controlling federal statute. *See* 16 U.S.C. § 457.[9] That Georgia substantive law applies does not, however, itself establish that there is personal jurisdiction in Georgia over the BAE and Sikorsky Defendants. Plaintiffs have the burden of demonstrating that Georgia has specific or personal jurisdiction over the BAE and Sikorsky Defendants. Plaintiffs have not met this burden.

Because Plaintiffs have failed to demonstrate that, at the time the action was filed, there was personal jurisdiction in the Southern District of Georgia over the Sikorsky and BAE Defendants, the request to transfer the claims there is **DENIED**.

  C.  Whether This Case Is Justiciable under the Political Question Doctrine

    1. <u>Legal Standards</u>

      a) General Principles

The political question doctrine addresses those cases that "revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986). The Judiciary is "fundamentally underequipped to formulate national policies or develop standards for matters not legal in nature." *Id.* Out of respect for the other branches under separation of powers, such cases are not subject to judicial review. *Baker v. Carr*, 369 U.S. 186, 210 (1962). The Supreme Court has outlined six categories of questions that are not suited to judicial review:

> Prominent on the surface of any case held to involve a political question is found [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.* at 217. In the event one of these circumstances is "inextricable from the case at bar," the case is not justiciable. *Id.* However, absent such an issue, the case is justiciable. *Id.*

A determination of whether a political question is presented requires a "discriminating inquiry into the

---

[9] Section 457 provides that if a person dies by neglect or wrongful conduct in a place "subject to the exclusive jurisdiction of the United States" that is within "the exterior boundaries of any State," the right of action for the death "shall exist as though the place were under the jurisdiction of the State within whose exterior boundaries such a place may be . . . ."

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07793 JAK (AJWx) | Date | April 27, 2015 |
|---|---|---|---|
| Title | Colette Carpenter, et al. v. Sikorsky Aircraft Corporation, et al. | | |

precise facts and posture of the particular case," and no case may be resolved "by any semantic cataloguing." *Baker*, 369 U.S. at 217. No category of politics is automatically immune from judicial review. *See id.* at 210-18; *see also Japan Whaling*, 478 U.S. at 229-30. Courts must "analyze . . . [a] claim as it would be tried, to determine whether a political question will emerge." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1281 (11th Cir. 2009) (internal quotation marks removed). Indeed, even unlawful military conduct may be subject to judicial review when a plaintiff seeks damages or carefully crafted injunctive relief. *See, e.g.*, *Gilligan v. Morgan*, 413 U.S. 1, 11-12 (1973); *see also Carmichael*, 572 F.3d at 1281 (not "all cases involving the military are automatically foreclosed by the political question doctrine"); *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1359 (11th Cir. 2007).

Private parties face a "double burden" when they invoke the political question doctrine to claim that judicial resolution of a case is not appropriate. *McMahon*, 502 F.3d at 1359. They must first demonstrate that the asserted claims require examination of some decision by the executive or legislative branch. *Id.* Thereafter, they must demonstrate that a decision is insulated from judicial review. *Id.*

Although "the political question doctrine may have a prudential element to its application," it is "at bottom a jurisdictional limitation imposed on the courts by the Constitution, and not by the judiciary itself." *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 981 (9th Cir. 2007). Accordingly, when deciding whether a political question is presented, a court may look beyond the face of the complaint. *See* Fed. R. Civ. P. 12(b)(1); *Corrie*, 503 F.3d at 982. Thus, courts are "free to weigh the facts" and are "not constrained to view them in the light most favorable" to the plaintiff, even at the pleading stage of the proceedings. *Carmichael*, 572 F.3d at 1279.

            b)       The Government Contractor Defense

The government contractor defense shields from liability those who act within the scope of authority validly granted by the government. *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 21 (1940). With respect to suppliers of military equipment, the Ninth Circuit has held that the government contractor defense shields them from liability if the following conditions are met: (1) the United States is immune from liability for the claims; (2) the supplier proves that the United States set or approved reasonably precise specifications for the allegedly defective military equipment; (3) the equipment performed to those specifications; and (4) the supplier warned the United States about the dangers in using the equipment known to the supplier, but not the United States. *McKay v. Rockwell Int'l Corp.*, 704 F.2d 444, 451 (9th Cir. 1983), *cert denied*, 464 U.S. 1043 (1984); *accord Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988); *Getz v. Boeing Co.*, 654 F.3d 852 (9th Cir. 2011).

In *McKay*, two Navy pilots were killed after ejecting from an aircraft manufactured by Rockwell. The Navy had provided the specifications for the aircraft. *McKay*, 704 F.2d at 446. The facts demonstrated that their deaths were likely caused by injuries sustained during the ejection. *Id.* Wrongful death suits were brought against Rockwell. *Id.* The district court entered judgment in favor of the plaintiffs after a trial on the merits. *Id.* On appeal, the Ninth Circuit remanded the case for a determination whether the government contractor defense applied. *Id.* at 453. The Ninth Circuit noted that the government contractor defense arose in circumstances where the judicial branch was not competent to review decisions made by the

Case 3:15-cv-02438-B   Document 67   Filed 04/27/15   Page 12 of 15   PageID 772

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07793 JAK (AJWx) | Date | April 27, 2015 |
|---|---|---|---|
| Title | Colette Carpenter, et al. v. Sikorsky Aircraft Corporation, et al. | | |

military concerning equipment design. *Id.* at 449. It also noted that the defense arose from the separation of powers; otherwise there could be "second guessing military orders," interference with "military discipline," and an impediment to "national security." *Id.* These factors parallel those that apply when a political question is presented for potential judicial review. Finally, on remand, the Ninth Circuit called for a determination whether the military "set or approved reasonable detailed specifications" for the ejection system. *Id.* at 453. In the event the military did not do so, the Ninth Circuit stated that Rockwell would be subject to strict liability. *Id.*

*Boyle v. United Technologies Corp*, 487 U.S. 500 (1988) is similar. There, the co-pilot of a military helicopter died as the result of a crash of the aircraft off the coast of Virginia during a training exercise. *Id.* at 502. The co-pilot survived the crash itself, but could not escape from the helicopter due to the design of its escape hatch. *Id.* at 503. Because he could not escape, he died. The Court adopted reasoning like that used in *McKay*. *Id.* at 512. The Court also stated that a determination whether the elements of the government contractor defense are satisfied is "a question for the jury." *Id.* at 514.

    2.  <u>The Positions of the Parties</u>[10]

Prototype argues that, if this matter were to proceed, its resolution would require an evaluation of military decisions. Specifically, it argues that the proceedings would "require the evaluation of the U.S. Army's decisions and conduct with regard to the procurement, design, maintenance, and operation of the Helicopter, flight procedures, flight training, tactical decisions regarding the training exercises, emergency response teams, and other related operations and procedures of the military." Dkt. 18 at 7. Plaintiffs argue that this is a "straightforward product defect, negligence, and warranty case" that does not "invoke political questions merely because the product was used by the United States armed forces or that servicemen were the victims." Dkt. 54 at 10.

In support of its position, Prototype relies on the Findings and Recommendations for AR 15-6 Investigation ("Military Report") concerning the helicopter crash at issue. Plaintiffs' Compendium of Exhibits, Dkt. 56-1, Ex. 1, Military Report. The military investigator concluded that the "accident was primarily caused by the failure of the tail rotor pitch change shaft" on the Helicopter. *Id.* at 4. The investigator found that this would "ordinarily be a recoverable incident if the following criteria were not also present." *Id.*

First, the investigator concluded that the tail rotor pitch change shaft failed due to both human error and system failure. *Id.* The human error was the failure to install a cotter pin in the tail rotor pitch change shaft. *Id.* The system failure was the result of a procedure that did not require a repairman to check to make sure all components were present when replacing a tail rotor pitch change shaft. *Id.* at 4-5.

Second, the investigator concluded that the Helicopter was at a "relatively low" altitude, at an approach

---

[10] Because the BAE and Sikorsky Defendants have been dismissed, only the claims against Prototype are addressed.

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07793 JAK (AJWx) | Date | April 27, 2015 |
|---|---|---|---|
| Title | Colette Carpenter, et al. v. Sikorsky Aircraft Corporation, et al. | | |

airspeed of 60-80 knots and at a lower power setting when the tail rotor pitch change shaft failed and did not provide "anti-torque thrust." *Id.* at 5.

The investigator also listed several "present and noncontributing" factors that "did not alter the outcome of the circumstances of this accident," but were "worth noting" to prevent "similar accidents in the future." *Id.* at 5. One was the lack of a quality assurance inspection "other than the installer/repairer as other individual procedures throughout the work package require[d]." *Id.* The investigator found no "negligence or misconduct on the part of any military personnel[.]" *Id.* at 6.

Finally, Prototype relies on case law to support its political question argument. *E.g.*, *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221 (1986) (plaintiffs sought to compel Secretary of State to comply with a provision of a statute concerning international fishing) (justiciable); *Gilligan v. Morgan*, 413 U.S. 1 (1973) (former students sought broad injunctive relief against the Ohio National Guard after several students were killed during a protest) (not justiciable); *Saldana v. Occidental Petroleum Corp.*, 774 F.3d 544 (9th Cir. 2014) (plaintiffs sought relief against oil company for funding a Colombian military unit that murdered union members protesting oil pipeline) (not justiciable because United States also funded same Colombian military unit); *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271 (11th Cir. 2009) (wife of a sergeant sued defense contractor for injuries sustained by her husband while in combat in Iraq as a result of what she alleged was negligent driving) (not justiciable because driving protocols constituted military procedure); *Corrie v. Caterpillar, Inc.*, 503 F.3d 974 (9th Cir. 2007) (plaintiffs sought declaration that Caterpillar violated international human rights laws by selling bulldozers to Israel that were used to destroy Palestinian homes and kill 17 individuals) (not justiciable because United States paid for bulldozers); *Alperin v. Vatican Bank*, 410 F.3d 532 (9th Cir. 2005) (Holocaust survivors sought declaration that Vatican Bank engaged in war crimes during World War II (not justiciable) in addition to recovery of property (justiciable)); *Tiffany v. United States*, 931 F.2d 271 (4th Cir. 2001) (widow of a civilian pilot without a flight plan that entered an air defense zone and was killed in a collision with an F-4C fighter jet brought suit against the United States) (not justiciable); *Aktepe v. United States*, 105 F.3d 1400 (11th Cir. 1997) (over 300 Turkish Navy soldiers killed during NATO training exercise where United States erroneously fired a live missile at a Turkish ship) (not justiciable); *Occidental of Umm al Qaywayn, Inc. v. A Certain Cargo of Petroleum Laden Aboard Tanker Dauntless Colocotronis*, 577 F.2d 1196 (5th Cir. 1978) (a determination of who owns rights to oil extracted from the Persian Gulf) (not justiciable).

      3.    <u>Application</u>

Under *Baker v. Carr*, a determination of whether a political question exists may never be determined by "semantic cataloguing." 369 U.S. at 217. Yet, without providing factual support, Prototype argues that if this matter proceeds, its resolution will require a fact-finder to second guess military decisions, review specifications dictated by the military and review military training procedures. Based on these positions, it contends that a resolution may result in a lack of deference to the executive branch. The only evidence provided in support of Prototype's motion was the Military Report offered by the Plaintiffs. None of the statements in that Report show that a political question is inextricably tied to a resolution of the disputed facts in this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07793 JAK (AJWx) | Date | April 27, 2015 |
|---|---|---|---|
| Title | Colette Carpenter, et al. v. Sikorsky Aircraft Corporation, et al. | | |

This analysis is consistent with the principles that underlie the government contractor defense as it applies to manufacturers of military products. Prototype acknowledges the defense and states that it plans to rely on it. It does not, however, address the inconsistency in asserting this defense -- which does not apply to every government contract -- and its position that every case involving military contractors necessarily presents a political question. In neither *McKay* nor *Boyle* was it held that the respective trial court lacked subject matter jurisdiction because a political question was presented. In each case, the plaintiffs were representatives of military officers that had been injured by allegedly defective products. Prototype has not shown that these cases are not controlling on this issue. Moreover, none of the cases cited by Prototype involved facts similar to those alleged here. This is not a matter in which battlefield actions by the military are challenged or the review of foreign policy decisions is sought.

For these reasons, the Prototype Motion is **DENIED** without prejudice to its renewal following discovery.

    D.    Whether Plaintiffs Have Stated a Claim against Prototype

        1.    Legal Standards

Fed. R. Civ. P. 8(a) provides that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." The complaint must state facts sufficient to show that a claim for relief is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not include detailed factual allegations, but must provide more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted).

A party may bring a motion to dismiss a cause of action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support one. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In considering a motion to dismiss, the allegations in the challenged complaint are deemed true and must be construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996). However, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks omitted).

        2.    Application

The Complaint contains three causes of action: negligence; strict product liability; and breach of warranty. The Complaint alleges that Georgia substantive law applies. However, in their briefing, the parties have not discussed a choice of law analysis under Georgia law to determine what substantive law would apply

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07793 JAK (AJWx) | Date | April 27, 2015 |
|---|---|---|---|
| Title | Colette Carpenter, et al. v. Sikorsky Aircraft Corporation, et al. | | |

to each cause of action. Prototype's motion and reply papers cite cases in which the substantive law of a wide range of jurisdictions was applied. Until the law that applies in this case is determined, the significance of these cases cannot be measured. Further, the Complaint pleads many theories as to product liability as to every named defendant. Although these allegations are conclusory,[11] they confirm the need to determine the substantive law that applies in order to address the issues raised as to the viability of certain claims.

Because the Complaint alleges that each defendant performed all of these functions, it is implausible. Accordingly, the Prototype Motion is **GRANTED** as to the failure to state a claim under Fed. R. Civ. P. 12(b)(6). Plaintiffs must plead with greater specificity the alleged wrongful conduct by each of the defendants. And, these allegations should conform to the substantive law that Plaintiffs contend applies under the choice of law analysis under Georgia law.

**V.    Conclusion**

For the reasons set forth in this Order, the Motions of the BAE and Sikorsky Defendants are **GRANTED** due to a lack of personal jurisdiction. These parties are dismissed from this action, without prejudice to the filing of a separate action in a proper forum. The Prototype Motion is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **DENIED**, without prejudice, as to whether this action presents a political question. The Motion is **GRANTED** without prejudice to the filing of an amended complaint that adequately states a claim under Fed. R. Civ. P. 12(b)(6). In accordance with the Court's Standing Order, a redlined copy of the First Amended Complaint that reflects all changes made to the Complaint shall be attached to the First Amended Complaint. Any amended complaint shall be filed by May 11, 2015.

**IT IS SO ORDERED.**

                                                                                                :
                                                                Initials of Preparer    ak

---

[11] For example, the Complaint alleges that each named defendant, "among other things, designed, manufactured, tested, inspected, assembled, instructed, maintained, trained, distributed, advertised, marketed, warranted, and sold [the Helicopter] and/or its component parts . . .." Compl. ¶¶ 11, 13, 15, 19.